# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT C. JENKINS, as trustee of the ROBERT C. JENKINS LIVING TRUST, and ALLEN HARGEST, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 09 CV 3581 |
| v. | ) ) ) | Wayne R. Andersen District Judge |
| LAST ATLANTIS PARTNERS, LLC, LAST ATLANTIS CAPITAL MANAGEMENT, LLC, IRWIN BERGER, and STIG OSTGAARD | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' motion to dismiss [36] Plaintiffs' eight-count amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs Robert C. Jenkins and Allen Hargest allege a single contract claim, four securities related claims, two tort claims, and a fraud claim in connection with their investment in a private investment fund managed by Defendant Last Atlantis Capital Management LLC. For the reasons stated below, Defendants' motion to dismiss [36] is denied with respect to Count I, the breach of contract claim, and granted with respect to Counts II through VIII.

## BACKGROUND

The following is a summary of the allegations in Plaintiff's amended complaint. Plaintiffs collectively invested $1.15 million in Defendant Last Atlantis Partners (the Fund), a

private investment fund managed by Defendant Last Atlantis Capital Management, LLC (the Fund Manager). Defendant Berger is the Managing Director of Operations for the Fund Manager. Defendant Ostgaard is the Managing Director of Trading and Research for the Fund Manager.

The Fund is a "fund of funds" whereby investments in the Fund are pooled and then used to invest in third-party funds. Thus, the Fund does not generate returns by directly trading securities; rather, the Fund relies upon its investment in third-party funds that do trade securities to generate returns for the Fund. Interests in the Fund are non-transferable and according to the amended complaint, when an investor in the Fund wishes to divest his interest, the investor sells his interest back to the Fund; a process called redemption. Furthermore, an investor's ability to redeem his interest is directly dependent upon the Fund being able redeem the Fund's own interest in the underlying third-party funds.

The Fund Manager's primary role, according to Plaintiffs, is two-fold: (1) to select third-party funds in which to invest the assets of the Fund and (2) to monitor the third-party funds in which the Fund invests. In the instant matter, Plaintiffs allege the Fund Manager selected the Anchor Fund as the primary investment for the Fund and the Fund Manager was responsible for monitoring the on-going suitability of the Anchor Fund as an appropriate investment. For these services, the Fund Manager charges a monthly asset management fee equal to 1/12 of 1% of the Fund's net asset value and a separate performance fee of 10% of any trading profits generated by the Anchor Fund.

On April 20, 2008, Plaintiffs allege they sought to redeem their interests in the Fund and in accordance with the Fund's stated policies, Plaintiffs expected to receive the cash value of their interest, less any applicable fees, on or before November 15, 2008. On or about October

13, Plaintiffs allege they received a letter from the Anchor Fund stating that it has "been in serious trouble affecting its ability to operate since at least '4Q 2007.'" According to Plaintiffs' amended complaint, in mid to late 2007, the Anchor Fund lost its investment advisor and "could not, among other critical functions, execute trades, re-balance portfolios, and/or re- establish hedges." According to Plaintiffs, the Anchor Fund effectively ceased to operate as an investment capable of generating returns for the Fund. Then, on or about October 28, 2008, Plaintiffs claim the Fund Manager sent Plaintiffs a letter stating that the Fund was suspending redemption requests because the Anchor Fund had suspended redemption requests. As a result, Plaintiffs allege losses as a result of their inability to redeem their interests in the Fund.

On June 12, 2009, Plaintiffs filed a six-count complaint against Defendants alleging breach of contract, securities fraud, common law fraud, breach of fiduciary duty, and negligent misrepresentation. This Court subsequently dismissed the complaint stating that Defendants had failed to allege a breach of contract claim and failed to adequately allege loss causation with regards to Plaintiffs' other claims. Plaintiffs then filed an eight count amended complaint alleging the following: (1) breach of contract, (2) beach of fiduciary duty, (3) common law fraud, (4) negligent misrepresentation, (5) violation of Section 10(b) of the Exchange Act and Rule 10b-5 of the Securities and Exchange Commission, (6) violation of Section 20(a) of the Exchange Act, (7) violation of Illinois Securities Law of 1953, 815 ILCS 5/12, (8), and violation of the Florida Securities and Investor Protection Act, Fla. Stat §§ 517.211, 517.301. Underpinning all of these claims, Plaintiffs allege that Defendants made the following misrepresentations:

    a.    The Fund Manager will evaluate potential management firms "for issues such as integrity, business skills, trading methodology, and risk management" ;

  b. The Fund Manager will engage in "ongoing management of a portfolio" and develop standards to "evaluate the performance of a manager selected on behalf of the Fund by the Fund Manager";

  c. "A combination of early warning indicators and required termination criteria are used to manage the ongoing risk and performance of a portfolio";

  d. "The Fund Manager monitors the performance and degree of performance correlation among both existing and prospective managers. The Fund Manager maintains a database of securities, futures and derivatives managers, and evaluates managers on the basis of their performance histories, trading methodologies, market concentration and diversification potential as reflected in the relative lack of correlation among their trading results";

  e. "Also considered are the manager's reputation, integrity, and trading psychology as well as its overall trading skill, money management, and the total amount of funds under management".

  f. "[T]he Fund Manager carefully scrutinizes new Managers and monitors all Underlying Investments in which the Fund invests..."; and

  g. "Once a strategy is incorporated into the portfolio, its performance is continually monitored."

Plaintiffs argue the Fund Manager made the representations above to induce Plaintiffs to invest in the Fund. However, according to Plaintiffs, the Fund Manager never had any intention of actually performing these monitoring services. Plaintiffs argue that, if the Fund Manager had performed the monitoring and management services stated above, the Fund Manager would have discovered the troubles in the Anchor Fund before the Anchor Fund would have effectively ceased to operate as a suitable investment. Furthermore, Plaintiffs argue the Fund Manager, upon learning of the Anchor Fund's troubles, would have divested the Fund's interest in the Anchor Fund prior to the Anchor Fund suspending redemptions.

  In response, Defendants' filed the instant motion to dismiss because Defendants argue Plaintiffs have once again failed to adequately plead loss causation with regards to all of their claims. This Court agrees with Defendants that Plaintiffs' have failed to plead loss causation with regards to their securities, tort, and fraud related claims. However, Plaintiffs have

adequately pled a breach of contract claim. Therefore, for the following reasons, this Court denies Defendants' motion to dismiss Plaintiffs' breach of contract claim in Count I but dismisses Plaintiffs' other claims alleged in Counts II through VIII in Plaintiff's amended complaint.

## STANDARD OF REVIEW

In order to survive a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1940 (citing *Twombly,* 550 U.S. at 556). Additionally, a complaint must describe the claim with sufficient detail as to "give the defendants fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). The complaint must be construed in a light favorable to the plaintiff, and the court must accept all material facts alleged in the complaint as true. *Rujawitz v. Martin,* 561F.3d 685, 688 (7th Cir.2009).

Additionally, Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances of fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). A plaintiff must plead enough factual allegations to "'raise a right to relief above the speculative level,'" in other words to one "'that is plausible on its face.'" *Pugh v. Tribune Company*, 521 F.3d 686, 699 (7th Cir. 2008) (quoting *Bell Atlantic*, 550 U.S. at 545, 570).

## DISCUSSION

**I. Count I: Breach of Contract**

This Court finds that Plaintiffs have adequately alleged a breach of contract claim. Defendants, however, argue that Plaintiffs failed to sufficiently allege that Plaintiffs were damaged as a result of Defendants' alleged breach of contract. Defendants argue that no losses resulted from the alleged breach of contract. In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court is not required to ascertain what were the actual damages that resulted from Plaintiffs' contract claim. Rather, in accordance with Fed. R. Civ. P. 8, Plaintiffs are only required to generally plead all the required elements of a breach of contract. Plaintiffs have adequately pled a breach of contract claim and thus, this Court denies Defendants' motion to dismiss with respect to Count I of Plaintiffs' amended complaint.

**II. Counts II through VI: Rule 10-b5, Controlling Person Liability, Common Law Fraud, Negligent Misrepresentation, and Breach of Fiduciary Duty.**

With respect to Plaintiffs' claims alleged in Counts II through VII, Plaintiffs failed to allege how Defendants' misstatements or misrepresentations caused Plaintiffs' losses. In legal jargon, Plaintiffs failed to plead "loss causation" in their amended complaint. Loss causation means that there is a causal connection between Defendants' material misrepresentation and the loss in value of the securities purchased or sold by Plaintiff. *Ray v. Citigroup Global Markets, Inc.*, 482 F.3d 991, 995-96 (7th Cir. 2007). Defendants argue Plaintiffs, in their amended complaint, generally allege that Defendants' purported misrepresentations caused Plaintiffs' losses but without the particularity required by Fed. R. Civ. P. 9 and the PLSRA's heightened pleading standards. *See* 15 U.S.C. § 78u-4(b)(1).

The Seventh Circuit in *Ray v. Citigroup Global Markets, Inc.*, outlined several methods for proving loss causation. *Id*. Each of these methods had one important aspect in common: each method required some sort of showing of how the value of a security was calculated and how the misrepresentation affected that calculation. *Id*. In considering a motion to dismiss, the

Court does not require that a plaintiff make a showing of facts supporting loss causation; however, a plaintiff must allege facts demonstrating loss causation. In the instant matter, Plaintiffs have not alleged facts that demonstrate in any way how Defendants monitoring, or the lack thereof, figured into the value calculation of Plaintiffs' interest in the Fund.

According to Plaintiffs' amended complaint, Plaintiffs' interest in the Fund is non-transferable and to receive the cash value of their interest, Plaintiffs must sell their interest back to the Fund. Plaintiffs allege the sale value of their interest in the Fund is completely a function of the net asset value of the Fund's underlying interest in the Anchor Fund, less any applicable fixed percentage management fees. The amended complaint does not contain any other allegations demonstrating how the Defendants' monitoring, or lack thereof, affects the sale value calculation of their interests in the Fund. According to the amended complaint, there is no third-party market for selling Plaintiffs' interests that Defendants' fund management practices might affect a sale price to an unrelated third-party. Furthermore, Plaintiffs do not allege that there is any sort of bargaining between the Fund and the Plaintiffs whereby the Plaintiffs own independent valuation would factor into the sale price of an interest in the Fund.

Finally, Plaintiffs argue that their inability to redeem their investment in the Fund is the source of Plaintiffs' losses. However, Plaintiffs have not alleged misrepresentations concerning potential illiquidity and redemption. Actually, Plaintiffs have alleged the opposite. Plaintiffs allege that Defendants, prior to Plaintiffs' investment, informed Plaintiffs that their right of redemption is dependent upon the Fund's ability to redeem its own interests in any underlying third-party funds. In summary, Plaintiffs fail to allege loss causation and Plaintiffs' complaint with regards to Counts II through VII is deficient as a matter of law.

**III. Count VIII: Florida Securities Law Claim**

With respect to Plaintiffs Florida securities law claim, this Court finds Plaintiffs have failed to allege some act in connection with the sale of a security that occurred in the State of Florida. *See Allen v. Oakbrook Securities Corp.*, 763 So.2d 1099, 1101 (Fla. App. Ct. 1999). Plaintiffs merely plead that Plaintiff Hargest is a resident of the State of Florida. Plaintiffs do not include in their amended complaint any act in connection with the sale of a security that occurred in the State of Florida. Thus, this Court finds Plaintiffs failed to adequately plead a Florida Securities law claim.

## CONCLUSION

For the aforementioned reasons, this Court denies Defendant's motion to dismiss [36] with respect to Count I and dismisses Plaintiffs claims in Count II through Count VIII.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated:__ 7/30/2010_____